UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THERESA BURKE, INDIVIDUALLY                    CIVIL ACTION
AND ON BEHALF OF HER MINOR
CHILD, F.B.

VERSUS                                         NO. 21-1588

JOSEPH P. LOPINTO III, ET AL.                  SECTION "R" (5)


**ORDER AND REASONS**

Before the Court is a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(c) or, in the alternative, for summary judgment pursuant

to Rule 56, filed by Sheriff Joseph P. Lopinto, III, and Deputies Gary Kessel,

Chase Maffe, and Oscar Pacheco.[1]  Plaintiff opposes defendants' motion.[2]

For the following reasons, the Court grants in part and denies in part

defendants' motion.


## I.    BACKGROUND

This case arises out of an arrest that occurred on August 22, 2020.

Plaintiff filed a complaint related to the arrest in which she alleged the

following facts:  13-year-old F.B. and his several of his friends took a vehicle

---

[1]      R. Doc. 21.
[2]      R. Doc. 24.

owned by his friend's grandmother for a ride that day.[3]  None of the teenagers was armed.[4]  F.B. drove the car.[5]  During the ride, F.B. noticed police lights approaching the car from behind.[6]  Rather than pulling over, F.B. continued driving and eventually collided into reflective traffic markers on the street.[7]  At that point, all of the teenagers left the car and fled the scene by foot.[8]

Plaintiff further alleges that F.B. ran into the parking lot of Lakeside Mall in Metairie, Louisiana, and hid from the defendant police officers in the bushes.[9]  When the officers spotted F.B., he fled again, and the officers chased him.[10]  One of the officers pointed his gun at F.B. and yelled, "[i]f you don't stop fucking running, you little shit, I'm going to shoot you!"[11]  Upon hearing the officer's threat, F.B. allegedly dropped to his knees, raised his hands, and cried out, "[p]lease don't shoot me!"[12]

Plaintiff alleges that when the officers reached F.B., they body slammed him, grabbed him by the hair, and smashed his head into the

---

[3]    R. Doc. 1 ¶¶ 5-6.
[4]    *Id.* ¶ 11.
[5]    *Id.* ¶ 9.
[6]    *Id.* ¶ 7.
[7]    *Id.* ¶ 9
[8]    *Id.* ¶ 10.
[9]    *Id.* ¶¶ 13-14.
[10]   *Id.* ¶ 15.
[11]   *Id.*
[12]   *Id.* ¶ 16.

Case 2:21-cv-01588-SSV-MBN   Document 25   Filed 03/07/23   Page 3 of 34


pavement.[13]  Officer Pacheco also repeatedly punched F.B. in the abdomen. At the time of the incident, F.B. weighed 115 pounds, whereas Officer Pacheco weighed nearly 200 pounds.[14]

As a result of the beating, F.B. allegedly suffered a gash on his face, black eyes, a bloody nose, and lost consciousness once he was placed in the back of the police car.[15]  He was brought to Children's Hospital, where he underwent CT scans and x-rays because of the head injuries he sustained.[16] He was diagnosed with "major neurocognitive disorder," and the differential diagnoses listed on his discharge papers included concussion, corneal abrasion, cervical spine fracture/dislocation, and paraspinal neck pain.[17] After his initial visit to the hospital, he returned multiple times.  Plaintiff alleges that F.B. was later diagnosed with post-concussive syndrome, and although "his symptoms should have significantly improved by that time," they "continued to persist."[18]

Plaintiff also alleges that there was only one white teenager in the group involved with taking the car the day F.B. was arrested.  Although the

---

[13]    *Id.* ¶ 17.
[14]    R. Doc. 1 ¶ 18.
[15]    *Id.* ¶¶ 19, 22.
[16]    *Id.* ¶¶ 26, 29.
[17]    *Id.* ¶ 30.
[18]    *Id.* ¶ 32.

white teenager also fled from the stolen car, he allegedly was not harmed by the police, and when the boy's father arrived, the officer shook the father's hand and turned the boy over to his father.[19]  Conversely, when F.B.'s mother arrived on the scene, the officers refused to permit her to speak with him, and ultimately brought him from the hospital to the police station.[20] The other boys, all of whom were African American, were also arrested.[21]

Based on the foregoing allegations, plaintiff brought excessive-force claims pursuant to 42 U.S.C. § 1983 against defendants Kessel, Pacheco, and Maffe, the officers who arrested F.B.[22]  She brought a separate section 1983 excessive-force claim against Sheriff Lopinto in his capacity as Sheriff of Jefferson Parish.[23]  She also brought state law claims for assault, battery, aggravated battery, and intentional infliction of emotional distress against all defendants,[24] and state law claims for negligent hiring, negligent retention, negligent supervision, and malfeasance in office against Sheriff Lopinto.[25]

---

[19]     *Id.* ¶ 24.
[20]     *Id.* ¶¶ 25, 28.
[21]     *Id.* ¶ 42.
[22]     R. Doc. 1 ¶¶ 52-53.
[23]     *Id.* ¶¶ 54-71.
[24]     *Id.* ¶¶ 72-76.
[25]     *Id.* ¶ 77.

Defendants then moved for dismissal or, in the alternative, for summary judgment.[26]   In their statement of uncontested material facts, defendants contend that after F.B. wrecked the vehicle, he fled from the deputies on foot, and that he ultimately fell while running, at which point he was apprehended by the deputies.[27]   They further assert that once F.B. was apprehended, he "continued to violently resist arrest until subdued."[28]   In support of these contentions, defendants cite to the police report from the incident, which indicates that F.B. ran away from the officers, and that once the deputies reached F.B., F.B. pulled his arms away from the them as they attempted to handcuff him.[29]   The report indicates that in response to F.B.'s resistance, one of the deputies gave verbal commands to F.B. to stop fighting and punched F.B. in the abdomen.[30]   Defendants also provide evidence that F.B. was charged in state court with theft of a motor vehicle in violation of La. Rev. Stat. 14:67.26 and resisting arrest "by flight" in violation of La. Rev. Stat. 14:108.[31] After the charges were filed, F.B. agreed to participate in a six-

---

[26]     R. Doc. 21.
[27]     R. Doc. 21-3.
[28]     *Id.*
[29]     R. Doc. 21-4 at 4.
[30]     *Id.*
[31]     R. Doc. 21-5; R. Doc. 21-7.

month diversion program.[32]  After F.B. completed the program, the charges against him were dismissed.[33]  Defendants contend that plaintiff's claims for excessive force, battery, aggravated battery, assault, and intentional infliction of emotional distress are all barred by the *Heck* doctrine because F.B. was ultimately charged with, and acknowledged responsibility for, resisting arrest.[34]  They argue that plaintiff's claim for excessive force against Sheriff Lopinto must be dismissed because plaintiff has failed to establish an unconstitutional policy or custom.[35]  They contend that Sheriff Lopinto is immune from plaintiff's claims for negligent hiring, negligent retention, and negligent supervision pursuant to La. Rev. Stat. § 9:2798.1.[36]  Finally, they argue that plaintiff has failed to establish malfeasance.  Plaintiff opposes defendants' motion.[37]

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

---

[32]   R. Doc. 21-6.  The program was subsequently extended by six more months.  R. Doc. 21-8.

[33]   R. Doc. 21-9.

[34]   R. Doc. 21 at 7-18.

[35]   R. Doc. 21 at

[36]   R. Doc. 21 at 24.

[37]   R. Doc. 24.

In considering a motion to dismiss, a court typically must limit itself to the pleadings and their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But a court may also consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted). Because defendants have submitted materials outside the pleadings that were not explicitly referred to in plaintiff's complaint, the Court will treat defendants' motion as one for summary judgment.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or

weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

### A.   Claims Against Deputies Kessel, Pacheco, and Maffe

#### 1.   *Section 1983 Excessive-Force Claims*

Plaintiff brings section 1983 claims against Deputies Kessel, Pacheco, and Maffe for their use of excessive force when they arrested F.B.[38] Title 42, United States Code, section 1983 provides a cause of action for plaintiffs whose federal rights are violated under color of state law.  42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law."  *Id.*  A section 1983 claim cannot withstand summary judgment if it improperly challenges convictions that arise from the same facts used as the basis for the section 1983 claim.  *Sheppard v. City of Alexandria*, No. 10-1396, 2012 WL 3961820, at *1 (W.D. La. Sept. 10, 2012).

Defendants contend that plaintiff's section 1983 claims for excessive force are barred pursuant to the Supreme Court's decision in *Heck v.*

---

[38]    Plaintiff contends that the officers' use of force violates both the Fourth Amendment and the Fourteenth Amendment.  The Court analyzes plaintiff's claims under the Fourth Amendment, as "[t]he Fourth Amendment's right to be free from unreasonable seizures governs excessive-force claims."  *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." (emphasis in original)).

*Humphrey*, 512 U.S. 477 (1994).   For purposes of this motion, it is undisputed that F.B. initially ran from the police on foot; that once the police reached him, he pulled his arms away from them, in response to which the deputies punched him in the abdomen; that F.B. was charged with resisting arrest "by flight;" and that the charges were dropped after F.B. completed a pre-trial diversion program.   In their motion, defendants argue that plaintiff's excessive-force claims are inconsistent with F.B.'s charge for resisting arrest, and that they are thus procedurally barred by *Heck*.

In *Heck v. Humphrey*, a prisoner who had been convicted of voluntary manslaughter brought an action under section 1983 against police and prosecutors while his appeal challenging his arrest and conviction was still pending.   512 U.S. at 478-79.   The suit sought compensatory and punitive monetary damages.  *Id*. at 479.  The Court noted that section 1983 created "a species of tort liability" analogous to the common-law tort action of malicious prosecution.   *Id*. at 483-84.   It further noted that an action for malicious prosecution requires that the criminal proceeding be terminated in favor of the accused.   *Id*. at 484.   Otherwise, a convicted defendant could mount a collateral attack on his conviction in the guise of a civil suit.   *Id*. at 484.

The Court concluded that section 1983 claims for damages are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486.  A plaintiff may bring a section 1983 action that would necessarily imply the invalidity of his conviction, but only in particular circumstances:

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486-87.

Accordingly, when a district court confronts a section 1983 action for damages that implicates a conviction or sentence, it must determine whether a ruling for the plaintiff "would necessarily imply the invalidity" of the plaintiff's conviction or sentence.  *Id.* at 487.  If the court determines that it would, the action cannot proceed unless the conviction has been vacated, invalidated, or overturned.  *Id.* at 487.

In this case, F.B. was not convicted of or sentenced for resisting arrest. Rather, the charges against him were dropped after his completed a pre-trial

diversion program.  Nevertheless, plaintiff does not dispute that the *Heck* procedural bar can apply in cases in which a criminal defendant participates in a pre-trial diversion program rather than pleading guilty or going to trial. *See Morris v. Mekdessie*, 768 F. App'x 299 (5th Cir. 2019) (holding that *Heck* applies to pre-trial diversion programs, which "essentially [are] a middle ground between conviction and exoneration," because "defendants entering diversion programs acknowledge responsibility for their actions" (internal quotation marks omitted)).  Rather, plaintiff contends that the section 1983 excessive-force claim does not "necessarily imply the invalidity of" of F.B.'s acknowledgment of responsibility for resisting arrest.

The Fifth Circuit has explained that "[a]lthough the *Heck* principle applies to section 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive," requiring an inquiry into "whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction."  *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).  The Fifth Circuit has further elaborated that "a § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck*, if the factual

basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id.*

The Court first examines plaintiff's civil cause of action for excessive force. To prevail on such a claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016). "The test used to determine whether a use of force was reasonable under the Fourth Amendment is not capable of precise definition or mechanical application." *Trammel v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (internal quotation marks omitted). "Rather, its proper application requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance. However, officers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Id.*

The Court next looks to the statutory language underlying F.B.'s state-court charge for resisting an officer.  Under Louisiana law, resistance of an officer is defined as

> intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property . . . when the offender knows or has reason to know that the person arresting . . . is acting in his official capacity.

La. Rev. Stat. § 14:108.  Section 14:108(B)(1) lists five different ways a person can "obstruct[] an individual acting in his official capacity and authorized by law to make a lawful arrest," including:

> (a)  Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest,
>
> (b)  Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail,
>
> (c)  Refusal by the arrested or detained party to give his name . . . or providing false information regarding the identify of such party to the officer,
>
> (d)  Congregation with others on a public street and refusal to move on when ordered by the officer, and
>
> (e)  Knowing interference with a police cordon resulting from the intentional crossing or traversing of a police cordon by an unauthorized person[.]

*Id.* §§ 14:108(B)(1)(a)-(e).  F.B. was charged with "intentionally oppos[ing] and resist[ing] an officer of the law by flight before the arresting officer can restrain him and after notice is given that he is under arrest."[39]

        a.    F.B.'s resistance of arrest by flight

Defendants acknowledge in their statement of uncontested facts that F.B. ran from the deputies by foot before they ultimately reached him, and the police report to which defendants cite indicates the same.[40]  Plaintiff was charged with, and acknowledged responsibility for, resisting arrest "by flight."[41]

It is well established that there is "no *Heck* bar if the alleged violation occurred 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction."  *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020).  In *Bush v. Strain*, the plaintiff was convicted of resisting arrest under Louisiana Revised Statute section 14:108, and subsequently brought a section 1983 claim for excessive force against the officers who arrested her.  515 F.3d at 496-98.  The plaintiff specifically alleged that the arresting officer pushed her face into the back of an automobile after she was handcuffed and was no

---

[39]    R. Doc. 21-7.
[40]    R. Doc. 21-4 at 4.
[41]    R. Doc. 21-7.

longer resisting arrest. *Id.* at 496. The Magistrate Judge granted defendant's motion for summary judgment, determining that *Heck* barred the plaintiff's claim. *Id.* at 496-97. The Fifth Circuit reversed, finding that because the plaintiff had "produced evidence that the alleged excessive force occurred after she stopped resisting arrest, and the fact findings essential to her criminal conviction are not inherently at odds with the claim, a favorable verdict on her excessive force claims [would] not undermine her criminal conviction." *Id.* at 500.

Upon examination of the elements of each claim, the Court finds that, as in *Bush*, plaintiff's claim for excessive force is "temporally and conceptually distinct" from F.B.'s acknowledgment of responsibility for resisting an officer "by flight."[42]  *See Bush*, 513 F.3d at 498. A ruling in plaintiff's favor on her excessive-force claim, which is premised on the officers' conduct *after* they reached F.B., would create no conflict with F.B.'s state-law charge, which was premised on his flight from the officers *before* they reached him. *See also Rogers v. Jefferson Parish Sheriff's Office*, No. 18-11164, 2022 WL 124028, at *6 (E.D. La. Jan. 13, 2022) (plaintiff's claim that officers used excessive force after he was handcuffed was not barred by *Heck* because the claim did not imply the invalidity of his conviction for

---

[42]  R. Doc. 21-7.

resisting arrest by flight before he was handcuffed). In other words, "the fact findings essential to" F.B.'s charge of resisting arrest "are not inherently at odds with" plaintiff's section 1983 claim. *Bush*, 513 F.3d at 498.

Defendants contend that the factual allegations in plaintiff's complaint are inconsistent with the state-law charge for resisting arrest. Although the Fifth Circuit "applies *Heck* to bar claims based on underlying factual allegations if they necessarily contradict facts supporting the criminal conviction," *Rogers*, 2022 WL 124028, at *6, here, the factual allegations do not contradict facts supporting the charge. The only factual allegations that defendants contend create conflict with the charge for resisting arrest are plaintiff's allegations that (1) F.B. dropped to his knees when one of the officers threatened to shoot him, (2) F.B. complied with the command to stop running, but the police nevertheless body slammed him and smashed his head into the concrete, and (3) F.B. "never made any threatening or aggressive movement towards the law enforcement deputies;" rather, he "was terrified with a gun pointed at him, and complied with the officers' commands."[43] None of these allegations is inconsistent with the charge for which F.B. acknowledged responsibility: that before officers reached F.B., he resisted arrest by flight.

---

[43]    R. Doc. 21-1 at 3.

In sum, because F.B. was not charged with resisting arrest beyond his "flight" from the officers, plaintiff's excessive-force claim is "temporally and conceptually distinct" from the charge for which he accepted responsibility. *See Idel v. LeBlanc*, No. 17-1553, 2019 WL 1903285, at *10 (E.D. La. Apr. 29, 2019) (noting that it "is possible both for Plaintiff to have [disobeyed orders to stop fighting] and for Defendant to have applied excessive force after Plaintiff had ceased these actions"). Defendants have thus failed to meet their burden of establishing that they are entitled to judgment as a matter of law on plaintiff's excessive-force claims against Deputies Pacheco, Kessel, and Maffe.

> ### b.   F.B.'s resistance of arrest by force

Throughout their motion, defendants focus on F.B.'s resistance after the officers reached him. The state-court documents that defendants provide show that F.B.'s charge was not related to this conduct. Rather, he was charged with resisting arrest "by flight before the arresting officer can restrain him and after notice is given that he is under arrest,"[44] which tracks the statutory language of La. Rev. Stat. 14:108(B)(1)(a). The Supreme Court of Louisiana has clarified that subsection (B)(1)(a) applies to "flight only in

---

[44]    R. Doc. 21-7.

the narrow instance of one not yet restrained," whereas (B)(1)(b) covers "post-arrest . . . resistance and opposition, but not flight." *State v. Bullock*, 576 So. 2d 453, 457 (1991). F.B.'s charge was not premised on, nor is there any evidence that he acknowledged responsibility for, resisting arrest *after* the officers reached him.

But even if F.B.'s charge were premised on his resistance after the officers reached him rather than on his initial flight from the officers, defendants have failed to establish that plaintiff's claims would be barred by *Heck*. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004). In *Arnold*, the plaintiff was convicted of resisting arrest, and in connection with his conviction, the judge determined that the plaintiff had initiated a physical confrontation with the police. *Id.* at 324. The plaintiff later filed an excessive-force claim in which he alleged that he did nothing to provoke the police. *Id.* The Fifth Circuit held that his claim was barred by *Heck* because a finding in the plaintiff's favor would necessarily contradict the factual findings that supported his conviction for resisting arrest. In so doing, the Fifth Circuit distinguished the facts of that case from cases in which section 1983 plaintiffs did not deny facts underlying their state-court convictions. *Id.* at 324-25. Other sections of this court have since relied on *Arnold* to reject arguments that excessive-force claims are barred by *Heck*

when excessive-force claimants do not deny that they resisted arrest, but rather, contend that the degree of force that officers used in response to their resistance was unreasonable. *See Champagne v. Martin*, No. 18-1785, 2019 WL 3430457, at *5 (E.D. La. July 29, 2019) (defendants were not entitled to summary judgment because "[t]he crux of the case at hand is whether the force used to overcome [plaintiff's] resistance was reasonable"); *Perkins v. Hart*, No. 21-879, 2022 WL 2952992, at *6 (E.D. La. July 26, 2022) (defendants were not entitled to summary judgment because the plaintiff "[did] not deny that she resisted defendants' attempts to arrest her," but rather argued that "defendants' used of force during the arrest was excessive").

Here, plaintiff does not dispute that F.B. resisted arrest by pulling his arms away from the police as they tried handcuffing him.[45]   Rather, she contends the amount of force used to overcome his resistance was excessive.[46]  Accordingly, "[t]he crux of the case at hand is whether the force used to overcome [F.B.'s] resistance was reasonable." *Champagne*, 2019 WL 3430457, at *5.  Plaintiff has identified a genuine dispute of material fact as to whether the force defendants used to overcome F.B.'s resistance was

---

[45]    R. Doc. 24 at 13.
[46]    *Id.*

reasonable—plaintiff has put forth medical records that indicate that F.B. sustained a concussion and lost consciousness "during [his] altercation with police,"[47] and defendants do not deny that the arresting deputies slammed F.B.'s head into the concrete and punched him repeatedly.  Conversely, the only evidence defendants have of F.B.'s resistance that supposedly necessitated the use of force is that F.B. pulled his arms away from the officers as they tried to handcuff him.[48]  Accordingly, even if F.B.'s charge for resisting arrest were premised on his conduct after the police reached him, defendants would not be entitled to summary judgment on plaintiff's excessive-force claims.

### 2.   *State-Law Claims*

Plaintiff also brings state-law claims for assault, battery, aggravated battery, and intentional infliction of emotional distress against Deputies Kessel, Pacheco, and Maffe.  Defendants contend that plaintiff's state-law claims must be dismissed for the same reason as plaintiff's excessive-force claims: they are barred in *Heck*.  "Louisiana law follows the rule from *Heck* and does not allow state law claims to withstand summary judgment if the

---

47     R. Doc. 24-2 at 3.
48     R. Doc. 21-4 at 4.

claims challenge the validity of the underlying criminal conviction." *Sheppard*, 2012 WL 3961820, at *2.

As to plaintiff's claims for assault and battery, "[u]nder Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force." *Rogers*, 2022 WL 124028, at *7 (internal quotation marks omitted). "[T]he same standard is used in analyzing a state law claim for excessive force [and by extension claims of assault and battery] as a constitutional claim, namely the reasonableness under the circumstances." *Id.* Accordingly, for the same reasons that the Court denies defendants' motion for summary judgment as to plaintiff's excessive-force claims under section 1983, the Court denies defendants' motion as to plaintiff's state-law claims for assault and battery. *Id.* (rejecting defendants' argument that plaintiff's state-law claims for assault and battery, which were premised on excessive force used *after* plaintiff resisted arrest, were barred by *Heck*).

Defendants' motion is also denied as to plaintiff's claim for intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress

suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).  Defendants do not contend that plaintiff has produced no evidence substantiating her claim; rather, defendants merely argue that her intentional infliction of emotional distress claim is barred by *Heck*.  But, as with plaintiff's other claims against Deputies Kessel, Pacheco, and Maffe, "the fact findings essential to" F.B.'s charge of resisting arrest "are not inherently at odds with" plaintiff's claim for intentional infliction of emotion distress, which does not require that plaintiff establish that F.B. did not resist arrest.  *Bush*, 513 F.3d at 498.

The Court thus denies defendant's motion as to plaintiff's state-law claims against Deputies Kessel, Pacheco, and Maffe.

### B.   Claims Against Sheriff Lopinto

#### *1.   Section 1983 Excessive-Force Claim*

Plaintiff sues Sheriff Lopinto in his official capacity.  As the Fifth Circuit has noted, "[o]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).  Thus, plaintiff's official-capacity claims against Sheriff Lopinto are actually claims against the

Jefferson Parish Sheriff's Office itself.  *See Bean v. Pittman*, No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015).  Because the Sheriff's Office is a municipal entity, plaintiff's section 1983 claim against Sheriff Lopinto must satisfy the requirements outlined in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Under *Monell*, to establish a section 1983 claim against a municipality, a plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).  As the Fifth Circuit has noted, these elements are necessary "to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted).

Defendants do not dispute that Sheriff Lopinto is a policymaker. Rather, they contend that plaintiff has failed to establish an official policy or custom that was the "moving force" behind plaintiff's injury.  A municipality may be held liable under section 1983 if the constitutional violation was inflicted through an official policy or custom.  *See Piotrowski*, 237 F.3d at 579.  The official policy requirement can be met in a number of different

ways. *See Burge*, 187 F.3d at 471. There may be an actual policy contained in officially promulgated policy statements, ordinance, or regulations. *See Piotrowski*, 237 F.3d at 579; *Burge* 187 F.3d at 471. Or there may be "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). A plaintiff must demonstrate that the municipal policymaker had actual or constructive knowledge of the custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). If there is no custom or policy, the "official policy" requirement may be met when the action of the policymaker itself violated a constitutional right. *See Burge*, 187 F.3d at 471. And finally, if a policymaker's failure to take some action evidences a "deliberate indifference" to constitutional rights, this inaction can fulfill the "official policy" requirement. *See Burge*, 187 F.3d at 471 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In this context, deliberate indifference is a "stringent test," and "a showing of simple or even heightened negligence will not suffice to prove municipal

26

culpability." *Piotrowski*, 237 F.3d at 579 (quoting *Bryan Cnty.*, 520 U.S. at 407).

In her opposition brief, plaintiff points to allegations in her complaint that Jefferson Parish has "an overt policy and practice whereby people of color are disproportionately stopped, detained, harassed, and subjected to the use of force by JPSO deputies."[49]  In her complaint, she also alleges that the deputies' conduct was "undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the [Jefferson Parish Sheriff's Office]."[50]  She further alleges that Sheriff Lopinto "encouraged, tolerated, ratified, and has been deliberately indifferent" to policies, practices, and customs of deputies using excessive force.[51]  In support of her claim, she alleges that multiple complaints have been filed against Sheriff Lopinto and others in the Jefferson Parish Sheriff's Office for using excessive force against African American boys and men.[52]

Even if these allegations were sufficient to state a claim under *Monell*, plaintiff has failed to provide evidence substantiating these allegations.  *Cf. Quatroy v. Jefferson Parish Sheriff's Office*, No. 04-451, 2009 WL 1380196,

---

[49]   R. Doc. 24 at 20.

[50]   R. Doc. 1 ¶ 50.

[51]   *Id.* ¶ 61.

[52]   *Id.* ¶ 43.

at *3 (E.D. La. May 14, 2009) (treating motion to dismiss or, in the alternative, for summary judgment, as a motion to dismiss plaintiffs' *Monell* claims when defendants' arguments went "to the legal sufficiency of plaintiffs' pleadings—not to whether plaintiffs have evidence that establishes genuine issues of fact for trial"). To survive summary judgment, a plaintiff must "present[] sufficient evidence to establish a fact question for municipal liability on the basis that" the Jefferson Parish Sheriff's Office maintained a "policy that was permissive of excessive force." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009). For example, in *Peterson*, the plaintiff brought a *Monell* claim against the City of Fort Worth for adopting an unwritten policy that was permissive of excessive force. *Id.* at 851. At summary judgment, the plaintiff identified 27 complaints filed against the city for use of excessive force from 2002 to 2005. The Fifth Circuit held that, in light of the plaintiff's failure to "provide context that would show a pattern of establishing a municipal policy," including the total number of arrests made from 2002 to 2005, and the evidence indicating that "only four of the 27 complaints were 'sustained' after investigation," the plaintiff had failed to identify "a pattern so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 850 (internal quotation marks omitted).

Here, plaintiff relies on her allegations about other complaints of the Jefferson Parish police's use of excessive force against minorities from 2017 through 2021. She does not provide evidence of those complaints, nor does she provide information regarding the disposition of each complaint or context about the total number of arrests made by Jefferson Parish police. *Cf. id.* at 851. Indeed, the only evidence she submits in connection with her opposition to plaintiff's motion are F.B.'s hospital records, which have no bearing on plaintiff's *Monell* claim. The Court thus grants defendants' motion as to plaintiff's 1983 claim for excessive force against Sheriff Lopinto.

### 2.   *State-Law Claims*

In addition to her claim for excessive force, plaintiff brought claims for assault, battery, aggravated assault, intentional infliction of emotional distress, negligent hiring, negligent training, negligent retention, negligent supervision, and malfeasance in office against Sheriff Lopinto in his official capacity as sheriff of Livingston Parish.

### a. Assault, battery, aggravated assault, intentional infliction of emotional distress

As to plaintiff's claims for assault, battery, aggravated assault, and intentional infliction of emotional distress, defendants' only argument

supporting dismissal is that these claims are barred by *Heck*.  Defendants do not argue that Sheriff Lopinto is not liable for the torts committed by his deputies, and as a general matter, government entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."  *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009).  Nor do defendants contend that there is no evidence supporting these claims.  Because the only argument defendants advance regarding Officer Lopinto's liability as to these claims is premised on *Heck*, the Court denies defendants' motion as to these claims for the same reason discussed in Section III.A.2, *supra*.

b.  Plaintiff's remaining state-law claims

Defendants argue, and in her opposition brief, plaintiff does not contest, that defendant is entitled to summary judgment on plaintiff's claims for negligent hiring, negligent retention, negligent training, negligent supervision, and malfeasance in office.  Her claims for negligent hiring, training, retention, and supervision are barred by La. Rev. Stat. § 9:2798.1, which provides:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

La. Rev. Stat. § 9:2798.1(B).  The provisions of La. Rev. Stat. § 9:2798.1(B) are not applicable "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."  La. Rev. Stat. 9:2798.1(C).

"Louisiana courts have adopted a test analogous to the FTCA discretionary function test in determining whether an official is protected by the statute, namely, (1) whether a state law, regulation, or policy specifically prescribes the officer's course of action; and (2) whether the challenged action is grounded in political, economic, or social policy." *Roberts v. City of Shreveport*, 397 F.3d 287, 298 (5th Cir. 2005).  Louisiana courts and federal courts applying Louisiana law have interpreted the statute to render officers immune from liability for state-law claims for negligent training, hiring, supervision, and retention. *See id.* (La. Rev. Stat. 9:2798.1(B) renders police chief immune from state-law claims premised on his "training officers under his command"); *Smith v. Lafayette Parish Sheriff's Dep't*, 874 So. 2d 863, 868 (La. App. 3 Cir. 2004) (sheriff's "hiring/retention policy was a discretionary act" for purposes of immunity under La. Rev. Stat. 9:2798.1); *Hoffpauir v. Columbia Cas. Co.*, No. 12-403, 2013 WL 5934699, at *12 (M.D.

La. Nov. 5, 2013) ("[T]he hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function."); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321 (M.D. La. Feb. 3, 2021) (sheriff's "duties to train, supervise, and hire are not prescribed by law or regulation, and these duties are grounded in policy considerations").

Defendants contend, and plaintiff does not dispute, that Sheriff Lopinto is immune from liability pursuant to La. Rev. Stat. 9:2798.1. Because plaintiff has "failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising, or screening officers," the Court funds that "the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which [La. Rev. Stat. § 9:2798.1] grants the officers and the department immunity." *Hoffpauir*, 2013 WL 5934699, at *12.

Finally, defendants' motion is likewise granted as to plaintiff's claim against Sheriff Lopinto for malfeasance in office.  The "fountainhead of Louisiana tort law," Louisiana Civil Code article 2315, "has been interpreted to permit a cause of action for malfeasance." *Jones v. Herlin*, No. 12-1978, 2013 WL 5270547, at *7 (W.D. La. Sept. 17, 2013).  That statute provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315(A).

32

There is little modern law regarding the tort of malfeasance, but in *Ellett v. Newland*, the Louisiana Supreme Court defined malfeasance as the "doing of an act which is wholly wrongful and unlawful, . . . the doing of an act which a person ought not to do at all." 171 La. 1019, 1024 (La. 1931). Federal courts have subsequently interpreted *Ellett* as generally requiring defendants to have "knowingly committed a wrongful criminal act" to be liable for malfeasance. *Boyte v. Wooten*, No. 04-1818, 2007 WL 3023935, at *7 (W.D. La. Oct. 16, 2007); *see also Scott v. Northern La. Med. Ctr.*, No. 16-0376, 2016 WL 8470184, at *11 n.19 (W.D. La. Sept. 9, 2016) (plaintiffs failed to "allege any facts to suggest that defendants were guilty of a criminal act" in support of their malfeasance claim); *Jones*, 2013 WL 5270547, at *7 ("[M]alfeasance under Louisiana law appears to be reserved for extremely egregious offenses, generally [rising] to the level of criminal conduct."). Defendants contend, and plaintiff does not deny, that plaintiff does not articulate the basis of her claim for malfeasance, nor has she identified any evidence in support of it. She has thus failed to identify a fact issue as to her claim for malfeasance.

Defendant's motion is thus granted as to plaintiff's state-law claims for negligent retention, negligent hiring, negligent training, negligent supervision, and malfeasance in office.

33

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion as to plaintiff's claims for excessive force, malfeasance, negligent hiring, negligent supervision, negligent retention, and negligent hiring as to Sheriff Lopinto. The Court DENIES defendants' motion as to plaintiff's other claims.

New Orleans, Louisiana, this __7th__ day of March, 2023.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE